* * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS 1. The parties are subject to the N.C. Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between plaintiff and defendant.
3. Travelers Insurance Company was the carrier on the risk.
4. Plaintiff's average weekly wage as determined by an I.C. Form 22 Wage Chart is $437.32, with a corresponding compensation rate of $291.69.
5. The Industrial Commission opened two Industrial Commission Files bearing Nos. 494710 and 494711 reflecting the August 16, 2004 and November 22, 2004 dates of injury. The parties consented to resolve all issues by one hearing.
6. In addition, the parties stipulated into evidence the following:
 a. Packet of medical records and reports.
 b. CD Marked Surveillance Willie Morris.
 c. Report by Advantage Surveillance dated July 18, 2005.
7. The Pre-Trial Agreement dated October 12, 2005, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is fifty-eight years old and is a high school graduate. He has a degree in basic law enforcement and has been previously employed as a deputy sheriff for a number of years before retiring. In approximately April 2004 plaintiff began working for defendant, a company operated by Billy and Bill Benton, that cleared land for roads and lots for construction. Plaintiff's primary job was dump truck driver, and he drove debris from the work site to the landfill. However, plaintiff's job also involved hauling equipment as well as some manual labor, such as raking and using a chain saw. *Page 3 
2. On August 16, 2004 plaintiff and Bill Asby, a co-worker, drove heavy equipment to a work site. The trailer Mr. Asby pulled had steel ramps that had to be manually lowered and raised. After Mr. Asby drove the bulldozer off of his trailer, plaintiff went over to that trailer to raise the ramps so that Mr. Asby would be able to move the truck more quickly. As plaintiff was lifting one of the ramps, he experienced a tearing sensation in his right shoulder. He continued working that day, but the next morning he told defendant that he had hurt his shoulder the previous day. Defendant indicated that he did not have workers' compensation insurance and that he did not want to hear something like that.
3. Following the injury, plaintiff continued to experience problems with his right shoulder, especially if he had to use the pole saw to trim branches on a load. Although he indicated that he went to his family doctor, Dr. Bobbitt, for the problem, no medical records from Dr. Bobbitt were submitted from that time period. Plaintiff was on prescription medication from some source when he began treating with Dr. Bates, an orthopedic surgeon, on October 19, 2004.
4. At his initial visit with Dr. Bates on October 19, 2004, plaintiff complained of right shoulder pain and left foot pain. In accordance with his normal procedure, Dr. Bates noted that plaintiff had a history of shoulder pain for several months after a lifting episode. The pain had gotten worse since the injury and was more acute with overhead activities. After physical examination and x-rays, Dr. Bates was of the impression that plaintiff had rotator cuff tendonitis and bursitis, particularly centered in the shoulder. Dr. Bates injected plaintiff's shoulder bursa with a steroid and started a non-steroidal anti-inflammatory medication. *Page 4 
5. Plaintiff did not keep his follow-up appointment with Dr. Bates on November 4, 2004.
6. On November 22, 2004 plaintiff had to back his truck in a tight space and the front of his truck went into a ditch so that the bumper was pushed inward. The bumper was made from a fiberglass shell over a steel frame. Since this had happened before, plaintiff knew how to push the frame back out. He got a small sledge hammer, opened the hood of the truck and struck the brace several times. The last blow glanced off of the brace and pulled his arm in such a way that he experienced severe pain in his right shoulder. Billy Benton came over to see what had happened and plaintiff told him that he had hurt his shoulder again.
7. Plaintiff returned to Dr. Bates on November 24, 2004, the first available appointment, for shoulder pain. Plaintiff reported that the cortisone injection he received in October had almost completely resolved the shoulder pain but he had re-injured his shoulder the week before and that he could not fully move his shoulder. Dr. Bates did not record the specifics of the injury. On examination, he found that plaintiff could not flex or forward elevate his shoulder. Dr. Bates injected cortisone into plaintiff's shoulder again and instructed plaintiff to return in two weeks. When plaintiff next saw Dr. Bates on December 9, 2004 he was experiencing persistent pain and was unable to flex or abduct his shoulder. Dr. Bates was concerned that plaintiff had a rotator cuff tear and ordered an MRI of plaintiff's joint. The MRI revealed a full thickness rotator cuff tear with retraction of the tissue from the bone. It also showed bone spurs at the acromioclavicular joint. *Page 5 
8. On January 3, 2005 Dr. Bates performed surgery to repair the rotator cuff tear and to remove the bone spurs at the acromioclavicular joint. He then followed plaintiff's recovery and ordered physical therapy. Plaintiff developed some recurrent pain in February 2005 and the doctor administered a cortisone injection, which provided significant relief. On March 10, 2005, Dr. Bates released plaintiff to return to light duty work. Plaintiff was subsequently able to return to work for another company in a truck driving position that did not require the manual labor and overhead work of his job with defendant.
9. On July 6, 2005, Dr. Bates noted that plaintiff had occasional pain and some lack of motion with overhead activities.
10. By letter dated July 8, 2005 Dr. Bates released plaintiff with a twenty-four percent (24%) permanent partial impairment rating to the right arm based on lack of motion and strength deficit. However, Dr. Bates testified that these results were subjective. Although plaintiff was given a twenty-four percent (24%) impairment rating, plaintiff was not place on continued work restrictions.
11. Plaintiff filed workers' compensation claims for both the August 16, 2004 incident and the November 22, 2004 incident, and defendants have denied liability.
12. Plaintiff did not lift the ramps for Mr. Asby's trailer on a daily basis while working for defendant, but he did lift them every week or two. Consequently, lifting the ramps was part of his regular work routine. There was nothing described as unusual or out of the ordinary in the manner that he lifted the ramp on August 16, 2004 when he felt the pain in his shoulder. Although the ramp was heavy, the weight was no different than it always had been.
13. Although plaintiff sustained an injury arising out of and in the course of his employment with defendant on August 16, 2004, the injury was not the result of an accident.
14. At the time of the second injury on November 22, 2004, there was an unusual event. The fact that the hammer glanced off of the bumper frame when plaintiff struck it constituted an unexpected occurrence that interrupted his regular work routine. Plaintiff experienced significantly worse shoulder pain when this occurred, to the point that he went down to his knees. *Page 6 
Consequently, plaintiff sustained an injury by accident arising out of and in the course of his employment on that day.
15. Plaintiff immediately reported the November 22, 2004 injury and went to Dr. Bates at the first available appointment. Although he had been able to abduct the arm to 140 degrees in October, he was unable to abduct or forward elevate the arm at the November 24, 2004 appointment. Dr. Bates did not make note that plaintiff's alleged injuries occurred at work until December 29, 2004.
16. Prior to plaintiff's August 16, 2004 injury, plaintiff had a non-compensable injury to the same shoulder.
17. On December 15, 2005, Dr. Bates gave testimony in the form of a deposition. Dr. Bates did not opine to a reasonable degree of medial certainty as to the cause of plaintiff's rotator cuff tear or underlying tendonitis. Dr. Bates did not have an opinion about when plaintiff's rotator cuff tendonitis could have started but indicated that it was probably going on for a little period of time.
18. Dr. Bates testified that there are various causes for a rotator cuff tear and that a rotator cuff tear can develop over time or it can be caused by a single traumatic incident. Plaintiff's rotator tear could have been the result of protracted rotator cuff tendonitis. Other than by history there is no way to pinpoint exactly when a rotator cuff tear took place. Dr. Bates indicated that it is possible that there was a tear prior to plaintiff's initial visit that had not been seen on x-rays. Dr. Bates indicated it was possible that the tear was present prior to plaintiff's initial visit on October 19, 2004, but there would not have been any way to know if the rotator cuff tear was present until plaintiff's MRI on December 15, 2004. *Page 7 
19. Dr. Bates testified that it was possible, not probable, that plaintiff's rotator cuff tear was consistent with swinging a three-pound sledgehammer that glanced off of something pulling and yanking plaintiff's shoulder.
20. Based upon the evidence presented before the deputy commissioner, the Full Commission finds that plaintiff's injury by accident on November 22, 2004 neither caused the rotator cuff tear for which plaintiff was subsequently treated nor materially aggravated plaintiff's preexisting shoulder condition so that further treatment, including surgery, was required. Therefore, plaintiff failed to carry his burden of proof.
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. With the exception of back injuries and hernias, in order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an "accident". N.C. Gen. Stat. § 97-2 (6).
2. An "accident" must involve more than merely carrying on the usual and customary duties in the usual way. An interruption of the work routine and introduction of unusual conditions likely to result in unexpected consequences must exist. Harding v. Thomas and HowardCompany, 256 N.C. 427 (1963).
3. On August 16, 2004 plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2 (6); Bowles v. CTS of Asheville, Inc.,77 N.C. App. 547 (1985).
4. On November 22, 2004 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2 (6). *Page 8 
5. Expert medical evidence was necessary in this case to establish a causal relationship between the injury by accident and the rotator cuff tear for which plaintiff was subsequently treated. Click v. PilotFreight Carriers, Inc., 300 N.C. 164 (1980).
6. Since no medical evidence was provided to show that the rotator cuff tear for which plaintiff was subsequently treated was a proximate result of the injury by accident, plaintiff failed to carry his burden of proof. Click v. Pilot Freight Carriers, Inc., 300 N.C. 164 (1980);Holley v. ACTS, Inc., 357 N.C. 228 (2003).
7. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his shoulder condition. N.C. Gen. Stat. § 97-2et seq.
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claims are hereby DENIED.
2. Each side shall pay its own costs.
This the 27th day of November, 2006.
 S/_____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_________________ PAMELA T. YOUNG COMMISSIONER
 S/_________________ BERNADINE S. BALLANCE COMMISSIONER